**MORGAN & MORGAN**
**COMPLEX LITIGATION GROUP**
Michael F. Ram (SBN 104805)
mram@forthepeople.com
Marie N. Appel (SBN 187483)
mappel@forthepeople.com
711 Van Ness Avenue, Suite 500
San Francisco, CA 94102
Telephone: (415) 358-6913
Facsimile: (415) 358-6923

**EPPS, HOLLOWAY, DELOACH**
**& HOIPKEMIER, LLC**
Kevin E. Epps, *Pro Hac Vice* to be submitted
Kevin@ehdhlaw.com
Tyler Gaines, *Pro Hac Vice* to be submitted
Tyler@ehdhlaw.com
1220 Langford Drive, Building 200-101
Watkinsville, Georgia 30677
Telephone: (706) 508-4000
Facsimile: (706) 842-6750

*Attorneys for Plaintiffs and the Proposed Classes*

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LORA C. ANGLIN and W. DAVID ANGLIN, on behalf of themselves and all others similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>HYUNDAI MOTOR AMERICA d/b/a HYUNDAI MOTOR NORTH AMERICA,<br><br>Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs, Lora C. Anglin and Judge W. David Anglin, through their attorneys, on behalf of themselves, and all others similarly situated, allege the following based upon information and belief, the investigation of counsel, and personal knowledge as to the factual allegations pertaining to themselves.

## **INTRODUCTION**

1.      Defendant Hyundai Motor America ("Hyundai") designed, manufactured, marketed, distributed, sold, warranted, and serviced thousands of 2022 Hyundai Palisades (the "Class Vehicles").

2.      The Class Vehicles suffer from a latent safety defect that causes the vehicles' steering wheel to dangerously shake or forcefully pull in one direction, causing the vehicles to veer from the intended direction of travel (the "Steering Defect").

3.      Because of the Steering Defect, Plaintiffs and Class Members ("Class Members") must strain to maintain a straight trajectory while driving their Class Vehicles. Alternatively, they find themselves repeatedly relying on the dealership's temporary "re-alignment," so that the vehicle may travel straight for a short period. The re-alignment does not correct the Defect.

4.      Hyundai has known of this defect since at least as early as May 2022, as evidenced by numerous NHTSA complaints and communications directly to Hyundai dealerships.

5.      Yet despite these notices, Hyundai refused to acknowledge the Steering Defect and make an appropriate recall, enabling their defective Class Vehicles to harm consumers like Plaintiffs, who purchased a new 2022 Hyundai Palisade trusting that it would be safe and reliable.

6.      Plaintiffs have complied with the Georgia Lemon Law, O.C.G.A. §§ 10-1-782, *et seq.*, and have given Hyundai reasonable opportunities to honor its obligations to cure the Steering Defect. But Hyundai has refused to and/or is unable to do so within a reasonable period.

CLASS ACTION COMPLAINT

7.      Hyundai's conduct is a breach of its express and implied warranties. Hyundai's conduct is also in violation of the California Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.* ("CLRA"), the Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.* ("UCL"). Hyundai's conduct is also in violation of the Georgia Fair Business Practices Act, O.C.G.A §§ 10-1-390, *et seq.*

8.      Hyundai has and will continue to benefit from its unlawful conduct—by selling and leasing more Class Vehicles and avoiding its contract and warranty obligations—while consumers are harmed at the point of sale because their vehicles suffer from the dangerous, latent Steering Defect. Had Plaintiffs and other proposed Class Members known that the defect existed at the time of purchase or lease, they would not have bought or leased the Class Vehicles or would have paid substantially less for them.

9.      As a result, Plaintiffs sue Defendant Hyundai in a class action on behalf of all consumers harmed by their misconduct, seeking relief including restitution, damages, and an injunction, as well as notification to all Class Members about the defect with the Class Vehicles' steering.

## PARTIES

10.      Plaintiffs, W. David Anglin, retired Oconee County Probate Court judge, and his wife, Lora C. Anglin, are residents and citizens of Watkinsville, Georgia.

11.      Defendant Hyundai Motor America is a California corporation with a principal address and place of business at 10550 Talbert Avenue, Fountain Valley, CA 92708 in the Central District of California.

## JURISDICTION & VENUE

12.      This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(d), as amended by the Class Action Fairness Act of 2005, because: (1) there are 100 or more potential Class Members, (2) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interests and costs, and (3) there is minimal diversity because Plaintiffs and Hyundai are citizens of different states. This Court has

CLASS ACTION COMPLAINT

supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367 because all claims are derived from a common nucleus of operative fact and are such that Plaintiffs would ordinarily be expected to try them in one judicial proceeding.

13.    This Court has personal jurisdiction over Hyundai because Hyundai transacts business within the state of California and has committed one or more tortious acts within the state of California.

14.    Hyundai transacted business and/or committed tortious acts within the state of California. Hyundai designs, manufactures, distributes, and/or sells dangerous and/or defective vehicles in California. Hyundai placed the defective and dangerous products into the stream of commerce, sold and/or supplied the products for use, used said products, and/or transacted business and committed tortious acts in California from which Plaintiffs' claims arise.

15.    Venue is proper in this judicial district under 28 U.S.C. § 1391 because Hyundai is a citizen of California with headquarters located in this district.

## FACTUAL ALLEGATIONS

16.    Beginning at least as early as October 2021, Hyundai designed, manufactured, marketed, distributed, sold, warranted, and serviced the 2022 Hyundai Palisade (the "Class Vehicles"). Hyundai continues to sell these Class Vehicles to the public.

17.     All Class Vehicles suffer from a dangerous latent safety defect with their steering systems that causes the steering of the Class Vehicles to pull in one direction or to intensely shudder.

18.    The Steering Defect substantially impacts the value, safety, and use of the Class Vehicles to Plaintiffs and Class Members. It renders them incapable of maintaining a straight trajectory while driving, requiring them to either continuously struggle against the pull of the vehicle or to "re-align" their vehicle for a temporary correction.

19.    Plaintiffs repeatedly strained to keep their vehicle from veering out of the

CLASS ACTION COMPLAINT

intended lane of travel and have presented the vehicle to Hyundai three times in an attempt to correct this issue, but Hyundai has failed to correct the defect.

20.    Plaintiffs' experiences are not unique; numerous other consumers have complained about the same issue:[1]

- 2022 Hyundai Palisade: "We picked up our new Calligraphy a month ago, but only have about 500 miles on it so far. I have noticed the past few times I drive it on a straight, flat road that the steering wheel is NOT straight. It sits cocked to the left by several degrees. Also, if I let go of the wheel on that same straight, flat highway the car tends to pull to the right." (posted on March 16, 2022) (available at https://www.palisadeforum.com/threads/steering-wheel-not-straight-on-new-calligraphy.5082/#post-45036) (last visited June 7, 2023);

- 2022 Hyundai Palisade: "I purchased my SEL AWD about a month ago, and from the get-go, I noticed car has a slight drift to right. I'm noticing it more as I'm putting more miles. Steering wheel "center" is slightly to right, takes no effort to steer right, but heavy to turn left. Decided to get it checked at dealership, 3 services/wheel alignments and wheel swap later, pull is so bad my left shoulder is hurting as I'm in constant steer mode in order to keep the car straight, and the extra effort it requires for left/u-turns. Yes, assist features are turned off, and change in drive mode doesn't help either. It's too early to assess the impact on tires. An engineer from Hyundai was alerted to evaluate my car, and I'm supposed to take the car back when he's available to come down to dealership. I'm dreading driving this car because of such unpleasant driving experience. I saw couple of previous posts about similar issue, and some owners on Facebook group voicing similar concerns, but is this still prevalent on newer units? What's causing the problem? Surely it's not alignment, is it something to do with shocks, control arms, steering wheel component? What is it?? It's leaving a terrible feeling in my gut about my brand new car." (posted on May 1, 2022) (available at https://www.palisadeforum.com/threads/2022-awd-palisade-pulls-drifts-to-right.5262/) (last visited June 7, 2023);

- 2022 Hyundai Palisade: "I purchased a new 2022 Palisade Limited with the same problem. In fact, I test drove a Calligraphy at the dealer which also has the issue. I brought it in for service and was told it is an issue with the steering sensor. Hyundai Motors America is aware of the issue

---

[1] Sic throughout.

CLASS ACTION COMPLAINT

but has no fix. I contacted Hyundai America who is blowing me off. A possible fix, which the dealer is performing now, is to unplug the battery for 24 hours which resets the car. The service tech then recalibrates the steering from scratch. Hopefully this works. I tried a re-alignment, but the steering is off so it does not make a difference. Lane assist on/off does not make a difference. Will report back soon..." (posted on June 9, 2022) (available at https://www.palisadeforum.com/threads/2022-awd-palisade-pulls-drifts-to-right.5262/post-48882) (last visited June 7, 2023);

  o "So, the dealer fix did not work. Left four voice mails for my case manager a Hyndai America, have not heard back. The dealer won't do anything either." (posted on June 13, 2022) (available at https://www.palisadeforum.com/threads/2022-awd-palisade-pulls-drifts-to-right.5262/post-49007) (last visited June 7, 2023);

- 2022 Hyundai Palisade: "I purchased the 2022 Palisade SEL AWD with convenience/Premium package last week in NJ. I also have the same issue and it's driving me nuts. I am suffered pain on my right arm initially and now on the left since I swapped the position to handle the turns. Disabling LFA or LKA doesn't work. By default I saw these were turned off when I took delivery of the car. Checked the tire pressure all looks good. Opened the hood and saw the battery terminal covers open. May be they reset the settings before they delivered ? And Enabling LFA and highway drive assist screwed the sensor ? God knows. I haven't seen any vehicle with incorrect wheel alignment showing these one side hard steering symptoms. It should be a sensor or power steering unit defect which Hyundai is trying to hide to its customers ? For which we pay markup fee. Is there a way to return the car and get the money back ?Its happening in America. I have an appointment tomorrow. Let's see what the service center folks do." (posted on June 13, 2022) (available at https://www.palisadeforum.com/threads/2022-awd-palisade-pulls-drifts-to-right.5262/post-49030) (last visited June 7, 2023);

  o "Update 1: Yesterday, the service folks in the other dealership test driven the vehicle (3miles) and was so dishonest by saying everything is perfect . . . 'No abnormalities found'. Finally spoke to the technician and took him for a test drive. He drove the vehicle with single hand and was saying all good ! Talked to the service manager and took him for a test drive and he too was not honest in accepting there is a problem. I had such a bad experience. He offered me a wheel alignment the next day. I could say these guys

CLASS ACTION COMPLAINT

are aware of the problem and simply hiding it for the fact that I didn't buy the car from them. I don't know if I can disclose the dealership name here. This business model is definitely going to fail for HYUNDAI !

o Update 2: Today, I went to the dealership where I purchased the car, the service advisor assigned a technician. The technician pulled the car out of the garage for a test drive. I asked him if he noticed the steering problem and he said yes before even I sat on the car. There you go! we did the 4 wheel alignment on a hunter hawkeye machine. The rear left tire had a slight toe misalignment. He said this shouldn't be the cause but anyways corrected it. Still the hard left steering didn't go away. He put the car on the ramp and checked. finally I got to know it was the power steering pump that has failed and there is a TSB from Hyundai for it. Part was not available and they said it is going to take atleast a month. I was given a loaner Palisade. $50k car is going to sit in the garage for 1 month within a week of purchase.

Hyundai is no more reliable given the fact they know the problem and didn't issue a recall yet for 2022 palisade. Hyundai Motor USA customer care is another piece of junk. I did raise a complaint a week ago and didn't hear anything from them yet. They are putting people's life at risk." (posted on June 15, 2022) (available at https://www.palisadeforum.com/threads/2022-awd-palisade-pulls-drifts-to-right.5262/post-49090) (last visited June 7, 2023);

• 2022 Hyundai Palisade: "So just dropped off my 2022 Caligraphy off for the dreaded pull to the right problem. All the assists are off and it has 300 miles on it. Did a 50 mile drive last week and noticed it more and more. Of course today on the way to the dealership it was very slight. After reading this thread I am not confident I am going to have a satisfactory resolution. Heres hoping... should hopefully find out tomorrow.

UPDATE #1. Dealership confirmed pulling. Swapped front tires and did alignment. Told it wasnt pulling anymore. Picked it up and noticed on the way home still pulling slightly to the right and the steering wheel is not centered. If I center the wheel it goes right. Called them and will be bringing back in the AM. This is really not looking good. First I get the lurching.. which thankfully seems to have settled down, and now this. I am not happy to say the least." (posted on June 20, 2022) (available at

6

CLASS ACTION COMPLAINT

https://www.palisadeforum.com/threads/2022-awd-palisade-pulls-drifts-to-right.5262/post-49231) (last visited June 7, 2023);

- 2022 Hyundai Palisade: "I have the exact same issue (drifts right, steering wheel off center, left turns require too much effort compared to right turns)on a brand new 2022 FWD Calligraphy bought in April. I am glad to see your post as Left turns are wearing me down and I dread driving it for safety concerns. A few weeks ago on my 2nd visit the tech called Hyundai after experiencing it. They said that Hyundai is aware of the issue, but doesn't know the cause or how to fix it and that I should sit tight while I continue to drive an unsafe vehicle! Has anyone else been told this? I plan to call them tomorrow! Please help!" (posted on June 26, 2022) (available at https://www.palisadeforum.com/threads/2022-awd-palisade-pulls-drifts-to-right.5262/post-49413) (last visited June 7, 2023;

- 2022 Hyundai Palisade: "any one having problem with steering wheel shaking?? after 2 appointments and tire balance i was told 'drive shaft to be replaced' i have only 2800 km on it, had it for 3 months ...i hope i dont have a Lemon" (posted on June 29, 2022) (available at https://www.palisadeforum.com/threads/steering-wheel-shaking.5483/#post-49520) (last visited June 7, 2023).

21. Federal law requires automakers like Hyundai to be in close contact with NHTSA regarding potential auto defects, including imposing a legal requirement compelling the confidential disclosure of defects and related data by automakers to NHTSA, including field reports, customer complaints, and warranty data. *See* 49 U.S.C. §§ 30101–30170 (Transportation Recall Enhancement, Accountability, and Documentation Act, "TREAD Act").

22. Automakers have a legal obligation to identify and report emerging safety-related defects to NHTSA under the Early Warning Report requirements. *Id.* Similarly, automakers monitor NHTSA databases for consumer complaints regarding their automobiles as part of their ongoing obligation to identify potential defects in their vehicles, including those which are safety related. *Id.* §§ 30166, 30167. Therefore, Hyundai knew or should have known of many complaints about the Steering Defect logged by NHTSA's Office of Defects Investigation. The content, consistency, and number of complaints alerted, or should have alerted, Hyundai to the Steering Defect.

CLASS ACTION COMPLAINT

23.    Consumer complaints made to NHTSA also state that dealerships were made directly aware of the problems caused by the Steering Defect:[2]

**Hyundai Palisade**

- 2022 Hyundai Palisade: "Our vehicle was purchased and taken home on 04/29/2022. On 05/06/23 we took the care in for an alignment issue, as the car drives right off the road, to the right. Dealership said it was off, at 200 miles only. They realigned and gave it back. It happens again, right after leaving the dealership. Car was taken back again on 05/06/22 for realignment yet again. Dealership rotated tires and realigned. This did not work again. So the third time, 06/23/22 we received another rotate and realignment. Again, this did not help, and a new front strut was ordered. The would drive right off the road, to the right, every time. Creating a major safety issue for our two toddlers, and family. The front strut was installed on 10/12/22. The dealership has been frustrated due to not being able to fix the alignment. Mind you, brand new car, 2022 Palisade. Front strut put on, but the vehicle is veering right again. Even the driver who picked the car up said he noticed the problem. Cooperate said we must get a second opinion from a Hyundai dealership before they can intervene. We have taken this brand new car to the same dealer at 200 miles, 1,000 miles, 5,000 miles and most recently for the strut. We're going to get into an accident and Hyundai beats around the bush." (posted on October 15, 2022) (available                                                    at https://www.nhtsa.gov/vehicle/2022/HYUNDAI/PALISADE/SUV/F WD) (last visited June 8, 2023);

- 2022 Hyundai Palisade: "Car pulls to right, and steering wheel is harder to steer/turn left to correct the pulling, causing strain on driver" (posted on          August          23,          2022)          (available          at https://www.nhtsa.gov/vehicle/2022/HYUNDAI/PALISADE/SUV/F WD) (last visited June 8, 2023);

- 2022 Hyundai Palisade: "Car purchased on 07 June 2022. Car with the dealership service since 14 June 2022 Steering Stiffness to the Left. Car dragging to the right. My left arm is sore and had aches in the joints due to the extra pressure in balancing the steering. Hyundai is aware of the issue but has no solutions to it. This is a serious safety risk." (posted on June                  23,                  2022)                  (available                  at

---

[2] Sic throughout.

CLASS ACTION COMPLAINT

https://www.nhtsa.gov/vehicle/2022/HYUNDAI/PALISADE/SUV/FWD) (last visited June 8, 2023);

- 2022 Hyundai Palisade: "The car pulls to the right and it is hard to steer left. At speeds higher than 50mph the steering wheels vibrates when turning left to correct the veering. The Lane Departure and Lane Keeping Assist to not operate correctly because the car veers to the right. I have had the car serviced twice within one week of purchasing and there is no fix from the dealer nor Hyundai. This issue was apparent within minutes of first driving the car, there are no warning lights. The alignment is out of spec but cannot be corrected by the dealer. The cause is reported as an issue with the steering angle sensor." (posted on June 17, 2022) (available at https://www.nhtsa.gov/vehicle/2022/HYUNDAI/PALISADE/SUV/FWD) (last visited June 8, 2023);

- 2022 Hyundai Palisade: "When increasing speed once it hits 65 up to 75 the steering wheel shake/vibrates. This is not safe at this speed and uncomfortable to drive. The service manager drove it and agreed the issue was there. It has been into be fixed several times. I am told each time it is fixed, but when test driven it is still an issue. I have been told it is fixed, but I have told them it is not." (posted on August 30, 2022) (available at https://www.nhtsa.gov/vehicle/2022/HYUNDAI/PALISADE/SUV/FWD) (last visited June 8, 2023).

24.    Complaints filed by consumers with the NHTSA and other websites demonstrate that the Steering Defect is a dangerous and widespread problem, with Hyundai's inaction subjecting drivers and passengers to hazardous circumstances.

25.    Many of the complaints reveal that Hyundai, through its network of dealers and repair conditions, were made aware of the Steering Defect.

26.    Each Class Vehicle sale or lease is accompanied with the Hyundai 5-year / 60,000-mile New Vehicle Limited Warranty ("NVLW").

27.    The terms of Hyundai's NVLW are contained in the warranty booklet that Plaintiffs and all the Class Members received at the time they purchased or leased the Class Vehicles.

\\\

9

CLASS ACTION COMPLAINT

Relevant terms include:

**What is Covered**
Repair or replacement of any component originally manufactured or installed by Hyundai Motor Company . . . that is found to be defective in material or workmanship under normal use and maintenance, except any item specifically referred to in the section "What is Not Covered."

28.    Hyundai controls the execution of all warranty repairs by its dealers, as it provides training, materials, special tools, diagnostic software, and replacement parts to its dealers, and demands that the warranty repairs be performed in strict accordance with its repair guidelines, Service Bulletins, and other instructions.

29.    In return, Hyundai pays its authorized Hyundai dealerships monetary compensation for such warranty repairs.

30.    Therefore, Hyundai's authorized dealerships are its agents for the purpose of vehicle repairs, and knowledge of a defect reported to any such dealer can be imputed onto Hyundai.

31.    When Class Members do present their vehicles to service this matter, Hyundai attempts to correct the vehicle by performing a regular alignment, resulting in temporarily correct steering. However, this method merely serves as a stop-gap solution that fails to address the actual underlying cause of the Steering Defect, leaving the Defect susceptible to reoccurrence.

**Plaintiffs W. David Anglin and Lora C. Anglin**

32.    Plaintiffs purchased a new 2022 Hyundai Palisade on April 8, 2022, from Sutherlin Hyundai (now called Hyundai of Athens), located in Athens, Georgia, with only 26 miles on the odometer. On the date of purchase, Plaintiffs noticed the vehicle pulled to the right and asked the Hyundai dealership to investigate. The dealership did so and released the vehicle to Plaintiffs on April 9, 2022.

33.    Plaintiffs quickly discovered that the Steering Defect had not been corrected and brought the vehicle, with a milage of 417, back to the dealership on April 14, 2022. The dealership stated that the vehicle should not be driven any further and

CLASS ACTION COMPLAINT

be left at the dealership. The dealership claimed that a faulty part was causing the problem.

34.     On April 23, 2022, following the dealership's replacement of the part, Plaintiffs reclaimed possession of the vehicle. Plaintiffs soon discovered that the Steering Defect remained unaddressed once again.

35.     Plaintiffs sought the expertise of a third-party mechanic, who likewise observed the challenge of piloting the vehicle in a straight trajectory.

36.     Plaintiffs once again delivered the vehicle to the dealership on May 2, 2022, and left it for repairs. The dealership contended that the steering issue originated from a software malfunction and attempted to correct this anomaly by conducting repairs and reprogramming the vehicle's EPS module.

37.     Plaintiffs retrieved their vehicle on May 24, 2022. The Steering Defect persisted.

38.     On May 27, 2022, after experiencing multiple unsuccessful attempts to repair their recently purchased vehicle, Plaintiffs sent the Hyundai dealership a "Notification of Need to Repurchase" pursuant to the Georgia Lemon Law, O.C.G.A. § 10-1-784.

39.     Hyundai never repaired the Steering Defect, nor did they elect to repurchase the vehicle within the statutory 20-day period provided by O.C.G.A. § 10-1-784(b)(1).

40.     Hyundai never informed Plaintiffs that their Palisade suffered from the Steering Defect when they purchased the vehicle, nor did any of Hyundai's marketing materials that Plaintiffs reviewed disclose the Steering Defect. All representations and materials from Hyundai marketed the vehicle as safe and reliable.

41.     Plaintiffs would not have purchased the vehicle or would not have purchased the vehicle at the price they did, had they known about the Class Vehicle's Defect.

42.     As a result, Plaintiffs have suffered damages in an amount to be

CLASS ACTION COMPLAINT

determined at trial.

## CLASS ALLEGATIONS

43.    Plaintiffs sue on behalf of themselves and the proposed Nationwide Class under the laws of the State of California. In addition, and in the alternative to the Nationwide Class, Plaintiffs seek to represent the Georgia Subclass (together "Class" unless otherwise noted), defined as follows:

> **Nationwide Class**: All individuals and entities in the United States that purchased or leased a Class Vehicle, except for residents of the State of California.

> **Georgia Subclass**: All individuals and entities in the State of Georgia that purchased or leased a Class Vehicle.

44.    Excluded from the Class are residents of the State of California, Defendant, its agents, affiliates, parents, subsidiaries, any entity in which Defendant has a controlling interest, any Defendant officer or director, any successor or assign, and any Judge who adjudicates this case, including their staff and immediate family.

45.    Plaintiffs reserve the right to amend the class definition.

46.    This action satisfies the numerosity, commonality, typicality, and adequacy requirements under Fed. R. Civ. P. 23.

47.    **Numerosity**. Plaintiffs are representative of the proposed Class. On information and belief, the Class consists of many thousands of members, far too many to join in a single action.

48.    **Ascertainability**. Class Members are readily identifiable from information in Defendant's possession, custody, and control.

49.    **Typicality**. Plaintiffs' claims are typical of Class Member's claims as each Class Member owns a vehicle with the same defect.

50.    **Adequacy**. Plaintiffs will fairly and adequately protect the proposed Class's interests. Their interests do not conflict with Class Members' interests and they have retained counsel experienced in complex class action litigation to prosecute this action on the Class's behalf, including as lead counsel.

CLASS ACTION COMPLAINT

51. **Commonality**. Plaintiffs and the Class's claims raise predominantly common fact and legal questions that a class wide proceeding can answer for all Class Members. Indeed, it will be necessary to answer the following questions:

a. Whether Defendant designed, manufactured, advertised, sold, and place the Class Vehicles into the stream of commerce;

b. Whether the Class Vehicles were defective as described above;

c. Whether Defendant breached its express warranties when it failed to correct the Steering Defect;

d. Whether Defendant breached its implied warranties after selling Class Vehicles that contained the Steering Defect;

e. Whether Defendant knew about the Steering Defect and, if so, for how long;

f. Whether Defendant knew about the Steering Defect but failed to disclose the problem and its consequences to its customers;

g. Whether Defendant's conduct violates consumer protection statutes, warranty law, and other laws as alleged in this complaint;

h. Whether the Class has suffered damages because of Defendant's misconduct;

i. What the proper damages measure is, including the diminution of value and deprivation of the benefit of the bargain; and

j. Whether the Class is entitled to injunctive relief.

Further, common questions of law and fact predominate over any individualized questions, and a class action is superior to individual litigation or any other available method to fairly and efficiently adjudicate the controversy. The damages available to individual plaintiffs are insufficient to make individual lawsuits economically feasible.

\\\
\\\
\\\
\\\
\\\

CLASS ACTION COMPLAINT

# CLAIMS FOR RELIEF

## A.    Nationwide Claims

### COUNT 1
**Breach of Express Warranty**
**(On Behalf of Plaintiffs and the Nationwide Class)**

52.    Plaintiffs repeat and re-allege each and every allegation contained in the preceding paragraphs as if fully set forth herein.

53.    Plaintiffs bring this claim on behalf of themselves and the Class against Hyundai.

54.    Hyundai is and was at all relevant times a merchant and seller of motor vehicles within the meaning of the Uniform Commercial Code and relevant state law.

55.    With respect to leases, Hyundai is and was at all relevant times a lessor of motor vehicles within the meaning of the Uniform Commercial Code and relevant state law.

56.    The Class Vehicles are and were at all relevant times goods within the meaning of the Uniform Commercial Code and relevant state law.

57.    Hyundai provided all purchasers and lessees of the Class Vehicles with an express warranty which became a material part of the bargain. Accordingly, Defendant's express warranty is an express warranty under applicable state law.

58.    In a section entitled "What is Covered," Hyundai's Warranty provides in relevant part that it covers "[r]epair or replacement of any component originally manufactured or installed by Hyundai Motor Company . . . that is found to be defective in material or workmanship under normal use and maintenance . . . ."

59.    The Warranty formed the basis of the bargain that was reached when Plaintiffs and other Class Members purchased or leased their Class Vehicles.

60.    Hyundai breached the express warranty through the acts and omissions described above.

61.    Plaintiffs and the Class Members have had sufficient direct dealing with Hyundai or their agents (*i.e.*, dealerships and technical support) to establish privity of

14

CLASS ACTION COMPLAINT

contract between Hyundai, on one hand, and Plaintiffs and each of the other Class Members on the other hand. Nonetheless, privity is not required here because Plaintiffs and each of the other Class Members are the intended third-party beneficiaries of contracts between Hyundai and its distributors and dealers, and specifically, of Hyundai's express warranties. The dealers were not intended to be the ultimate consumers of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit the consumer only.

57.     Any attempt by Hyundai to disclaim or limit recovery to the terms of the express warranty is unconscionable and unenforceable here. Specifically, the warranty limitation is unenforceable because Hyundai knowingly sold, distributed, or leased defective products without informing consumers about the Steering Defect. The time limits are unconscionable and inadequate to protect Plaintiffs and the Class Members. Among other things, Plaintiffs and the Class Members did not determine these time limitations and/or did not know of other limitations not appearing in the text of the warranties, the terms of which were drafted by Hyundai and unreasonably favored Hyundai. A gross disparity in bargaining power and knowledge of the extent, severity, and safety risk of the Steering Defect existed between Plaintiffs and the Class Members.

58.     Further, the NVLW promising to repair and/or correct a material or workmanship defect fails its essential purpose because the contractual remedy is insufficient to make Plaintiffs and the Class Members whole, because Hyundai has failed and/or has refused to adequately provide the promised remedies, i.e., a permanent repair, within a reasonable time.

59.     Plaintiffs and the Class Members were not required to notify Hyundai of the breach because affording Hyundai a reasonable opportunity to cure its breach of their written warranty would have been futile. Hyundai was also on notice of the Steering Defect from the complaints and service requests it received from Class

CLASS ACTION COMPLAINT

Members, including those formal complaints submitted to NHTSA, and through other internal sources.

60.     As a result of Hyundai's breach of the applicable express warranties, owners and/or lessees of the Class Vehicles suffered an ascertainable loss of money, property, and/or value of their Class Vehicles. Additionally, as a result of the Steering Defect, Plaintiffs and the Class Members were harmed and suffered actual damages in that the Class Vehicles are substantially certain to fail before their expected useful life has run. Had Plaintiffs known this information, they would not have purchased or would have paid less for their Class Vehicles.

61.     As a result of Hyundai's breach of the express warranty, Plaintiffs and the Class Members are entitled to legal and equitable relief against Hyundai, including actual damages, specific performance, attorney's fees, costs of suit, and other relief as appropriate.

## COUNT 2
### Breach of Implied Warranty of Merchantability
### (On Behalf of Plaintiffs and the Nationwide Class)

62.     Plaintiffs repeat and re-allege each and every allegation contained in the preceding paragraphs as if fully set forth herein.

63.     Plaintiffs bring this claim on behalf of themselves and the Class against Hyundai.

64.     Hyundai is and was at all relevant times a merchant and seller of motor vehicles within the meaning of the Uniform Commercial Code and relevant state law.

65.     With respect to leases, Hyundai is and was at all relevant times a lessor of motor vehicles within the meaning of the Uniform Commercial Code and relevant state law.

66.     The Class Vehicles are and were at all relevant times goods within the meaning of the Uniform Commercial Code and relevant state law.

67.     A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary for which vehicles are used is implied by law under the Uniform

CLASS ACTION COMPLAINT

Commercial Code and relevant state law.

68.     Hyundai knew or had reason to know of the specific use for which the Class Vehicles were purchased or leased. Hyundai directly sold and marketed the Class Vehicles to customers through their agents, the authorized dealers, like those from whom Plaintiffs and the Class Members bought or leased their vehicles, for the intended purpose of consumers purchasing the vehicles. Hyundai knew that the Class Vehicles would and did pass unchanged from the authorized dealers to Plaintiffs and the Class Members, with no modification to the defective Class Vehicles.

69.     Hyundai provided Plaintiffs and the Class Members with an implied warranty that the Class Vehicles and their components and parts are merchantable and fit for the ordinary purposes for which they were sold.

70.     This implied warranty included, among other things: (i) a warranty that the Class Vehicles that were manufactured, supplied, distributed, and/or sold by Hyundai were safe and reliable for providing transportation; and (ii) a warranty that the Class Vehicles would be fit for their intended use while the Class Vehicles were being operated.

71.     Contrary to the applicable implied warranties, the Class Vehicles at the time of sale and thereafter were not fit for their ordinary and intended purpose of providing Plaintiffs and the Class Members with reliable, durable, and safe transportation. Instead, the Class Vehicles were and are defective at the time of sale or lease and thereafter as more fully described above. Hyundai knew of this defect at the time these sale or lease transactions occurred.

72.     As a result of Hyundai's breach of the applicable implied warranties, Plaintiffs and the Class Members of the Class Vehicles suffered an ascertainable loss of money, property, and/or value of their Class Vehicles. Additionally, as a result of the Steering Defect, Plaintiffs and the Class Members were harmed and suffered actual damages in that the Class Vehicles are substantially certain to fail before their expected useful life has run.

CLASS ACTION COMPLAINT

73.     Defendant's actions, as complained of herein, breached the implied warranty that the Class Vehicles were of merchantable quality and fit for such use in violation of the Uniform Commercial Code and relevant state law.

74.     Plaintiffs and the Class Members have complied with all obligations under the warranty, or otherwise have been excused from performance of said obligations as a result of Hyundai's conduct described herein.

75.     Plaintiffs and Class Members provided Hyundai with reasonable notice and opportunity to cure the breaches of their implied warranties by the Steering Defect. But Hyundai has refused to and/or is unable to do so within a reasonable period.

76.     Plaintiffs and the Class Members were not required to notify Hyundai of the breach because affording Hyundai a reasonable opportunity to cure its breach of warranty would have been futile. Hyundai was also on notice of the Steering Defect from the complaints and service requests it received from Plaintiffs and the Class Members and through other internal sources.

77.     As a direct and proximate cause of Hyundai's breach, Plaintiffs and the Class Members suffered damages, including economic damages at the point of sale or lease and diminution of value of their Class Vehicles. Additionally, Plaintiffs and the Class Members have incurred economic damages at the point of repair in the form of the cost of repair as well as additional losses. Had Plaintiffs and the Class known this information, they would not have purchased or would have paid less for their Class Vehicles.

78.     As a direct and proximate result of Hyundai's breach of the implied warranty of merchantability, Plaintiffs and the Class Members have been damaged in an amount to be proven at trial.

\\\
\\\
\\\
\\\

CLASS ACTION COMPLAINT

### COUNT 3
**Violation of the California Consumers Legal Remedies Act**
**Cal. Civ. Code §§ 1750, *et seq*.**
(**On Behalf of Plaintiffs and the Nationwide Class**)

79.     Plaintiffs repeat and re-allege each and every allegation contained in the preceding paragraphs as if fully set forth herein.

80.     Plaintiffs bring this claim on behalf of themselves and the Class.

81.     This cause of action is brought under the CLRA. Plaintiffs and Class Members are consumers as defined by California Civil Code § 1761(d), and the Class Vehicles constitute goods within the meaning of the CLRA.

82.     Defendant has violated the CLRA by engaging in the following deceptive practices proscribed by California Civil Code § 1770(a) in connection with transactions intended to result in, and that did result in, the sale and/or lease of the Class Vehicles to Plaintiffs and Class Members in violation of, *inter alia*, the following provisions:

a.     Representing that the goods have characteristics, uses, or benefits which they do not have (Cal. Civ. Code §1770(a)(5));

b.     Representing that the goods are of a particular standard, quality, or grade if they are of another (Cal. Civ. Code § 1770(a)(7));

c.     Advertising goods with the intent not to sell them as advertised (Cal. Civ. Code § 1770(a)(9));

d.     Representing that a transaction involves rights, remedies, or obligations that it does not have or involve (Cal. Civ. Code § 1770(a)(14)); and

e.     Representing that the goods have been supplied in accordance with a previous representation when they have not (Cal. Civ. Code § 1770(a)(16)).

83.     Plaintiffs and Class Members, in purchasing/leasing and using the Class Vehicles, did reasonably act in response to Defendant's above representations or would have considered the omitted facts set forth herein as material to their purchasing/leasing decision. Plaintiffs and Class Members have suffered damages by the wrongful acts and practices of Defendant that are in violation of California Civil Code § 1781.

19

CLASS ACTION COMPLAINT

84.    Defendant engaged in unfair and deceptive acts, omissions, and practices by representing to Plaintiffs and the Class Members that the Class Vehicles were safe, reliable, and free from defects of workmanship and failing to disclose that the Class Vehicles had the Steering Defect which rendered the Class Vehicles difficult and dangerous to operate.

85.    The representations regarding the Class Vehicles were material to Plaintiffs and the Class Members. Defendant intended that Plaintiffs and the Class Members would rely on these representations and they did, in fact, rely on the representations.

86.    Had Plaintiffs and the Class known this information, they would not have purchased or would have paid less for their Class Vehicles.

87.    In accordance with California Civil Code § 1780(a), Plaintiffs and Class Members seek injunctive relief for Defendant's violations of the CLRA.

88.    In accordance with California Civil Code §§ 1782(a) and (d), Plaintiffs have provided Defendant with the appropriate notice and demand on July 17, 2023 by U.S. Mail, return-receipt requested, and will amend this Complaint once thirty days have passed if Defendant has not remedied the problem.

**COUNT 4**
**Unlawful, Unfair and Fraudulent Business Practices**
**Cal. Bus. & Prof. Code §§ 17200, *et seq.***
**(On Behalf of Plaintiffs and the Nationwide Class)**

89.    Plaintiffs repeat and re-allege each and every allegation contained in the preceding paragraphs as if fully set forth herein.

90.    Plaintiffs bring this claim on behalf of themselves and the Class.

91.    The UCL defines unfair competition to include any "unfair," "unlawful," or "fraudulent" business act or practice.

92.    Defendant has violated the UCL by representing to Plaintiffs and the Class Members that the Class Vehicles were safe, reliable, and free from defects of workmanship and failing to disclose that the Class Vehicles had the Steering Defect

CLASS ACTION COMPLAINT

which rendered the Class Vehicles difficult and dangerous to operate.

93.    By engaging in the above-described acts and practices, Defendant has committed an unfair business practice within the meaning of the UCL. Plaintiffs and the Class members have suffered substantial injury they could not have reasonably avoided other than by not purchasing or leasing the Class Vehicles.

94.    Defendant's acts and practices have deceived the Class members and the public and thus constitute a fraudulent business practice. Defendant uniformly marketed and advertised the Class Vehicles as safe, reliable, and free from defect when, in fact, they contain the Steering Defect which makes the vehicles difficult and dangerous to operate, which Defendant should have known.

95.    As discussed above, Plaintiffs and Class Members purchased and/or leased the Class Vehicles directly from Defendant and/or their authorized agents. Plaintiffs and Class Members were injured in fact and lost money as a result of such acts of unfair competition.

96.    The injuries suffered by Plaintiffs and Class Members greatly outweigh any potential countervailing benefit to consumers or to competition. The injuries suffered by Plaintiffs and the Class should have or could have been reasonably avoided.

97.    Defendant received the funds paid by Plaintiffs and the Class members and profited by misrepresenting the properties and quality of the Class Vehicles that they otherwise would not have sold. Defendant's revenues attributable thereto are, thus, directly traceable to the substantial amount of money paid by Plaintiffs and Class Members.

98.    Unless Defendant is enjoined from continuing to engage in the unlawful, unfair, and fraudulent business acts and practices as described herein, which is ongoing, Plaintiffs and Class Members will continue to be injured by Defendant's conduct and as a result do not have an adequate remedy at law. Plaintiffs and Class Members request this Court to enjoin Defendant from continuing to violate the UCL.

\\\

21

CLASS ACTION COMPLAINT

**COUNT 5**
**Unjust Enrichment (In the Alternative)**
**(On Behalf of Plaintiffs and the Class)**

99.    Plaintiffs repeat and re-allege each and every allegation contained in the preceding paragraphs as if fully set forth herein.

100.    Plaintiffs bring this claim for unjust enrichment in the alternative to the previously plead claims, Causes of Action One through Five.

101.    Substantial benefits have been conferred on Defendant by Plaintiffs and the Class through the purchase and lease of the Class Vehicles with the Steering Defect. Defendant knowingly and willingly accepted and enjoyed these benefits.

102.    Defendant either knew or should have known that the payments rendered by Plaintiffs and the Class were given and received with the expectation that the Class Vehicles would have the qualities, characteristics, and safety represented by Defendant. As such, it would be inequitable for Defendant to retain the benefit of the payments under these circumstances without payment of the value to Plaintiffs and the Class.

103.    Plaintiffs and the Class are entitled to recover from Defendant all amounts wrongfully collected and improperly retained by Defendant, plus interest thereon. Plaintiffs and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the law.

**B.    Georgia Claims**

**COUNT 6**
**Breach of Express Warranty**
**(On Behalf of Plaintiffs and the Georgia Sub-Class)**

104.    Plaintiffs repeat and re-allege each and every allegation contained in the preceding paragraphs as if fully set forth herein.

105.    Plaintiffs bring this claim on behalf of themselves and on behalf of the other Georgia Class Members against Hyundai.

106.    Hyundai was at all relevant times a "merchant" with respect to motor vehicles under O.C.G.A. §§ 11-2-104(1) and 11-2A-103(3), and "sellers" of motor

22

CLASS ACTION COMPLAINT

vehicles under § 11-2-103(1)(d).

107.   Hyundai is and was at all relevant times a "lessor" of motor vehicles under O.C.G.A. § 11-2A-103(1)(p).

108.   The Class vehicles are and were at all relevant times "goods" within the meaning of O.C.G.A. §§ 11-2-105(1) and 11-2A-103(1)(h).

109.   Hyundai provided all purchasers and lessees of the Class Vehicles with an express warranty which became a material part of the bargain. Accordingly, Defendant's express warranty is an express warranty pursuant to O.C.G.A. § 11-2-313.

110.   In a section entitled "What is Covered," Hyundai's Warranty provides in relevant part that it covers "[r]epair or replacement of any component originally manufactured or installed by Hyundai Motor Company . . . that is found to be defective in material or workmanship under normal use and maintenance . . . ."

111.   The Warranty formed the basis of the bargain that was reached when Plaintiffs and other Georgia Class Members purchased or leased their Class Vehicles.

112.   Hyundai breached the express warranty through the acts and omissions described above.

113.   Any attempt by Hyundai to disclaim or limit recovery to the terms of the express warranty is unconscionable and unenforceable here. Specifically, the warranty limitation is unenforceable because Hyundai knowingly sold, distributed, or leased defective products without informing consumers about the Steering Defect. The time limits are unconscionable and inadequate to protect Plaintiffs and the Georgia Class Members. Among other things, Plaintiffs and the Georgia Class Members did not determine these time limitations and/or did not know of other limitations not appearing in the text of the warranties, the terms of which were drafted by Hyundai and unreasonably favored Hyundai. A gross disparity in bargaining power and knowledge of the extent, severity, and safety risk of the Steering Defect existed between Plaintiffs and the Georgia Class Members.

114.   Further, the NVLW promising to repair and/or correct a material or

CLASS ACTION COMPLAINT

workmanship defect fails its essential purpose because the contractual remedy is insufficient to make Plaintiffs and the Georgia Class Members whole, because Hyundai has failed and/or has refused to adequately provide the promised remedies, i.e., a permanent repair, within a reasonable time.

115.    Plaintiffs and Georgia Class Members have provided Defendant with reasonable notice and opportunity to cure the breaches of their express warranties by way of the instant complaint, the numerous complaints filed with the NHTSA, and the individual notice letter sent by Plaintiffs within a reasonable amount of time.

116.    As a result of Hyundai's breach of the applicable express warranties, owners and/or lessees of the Class Vehicles suffered an ascertainable loss of money, property, and/or value of their Class Vehicles. Additionally, as a result of the Steering Defect, Plaintiffs and the Georgia Class Members were harmed and suffered actual damages in that the Class Vehicles are substantially certain to fail before their expected useful life has run. Had Plaintiffs known this information, they would not have purchased or would have paid less for their Class Vehicles.

117.    As a result of Hyundai's breach of the express warranty, Plaintiffs and the Georgia Class Members have been damaged in an amount to be determined at trial.

## COUNT 7
### Breach of Implied Warranty
### (On Behalf of Plaintiffs and the Georgia Sub-Class)

118.    Plaintiffs repeat and re-allege each and every allegation contained in the preceding paragraphs as if fully set forth herein.

119.    Plaintiffs bring this claim individually and on behalf of the other Georgia Class Members, against Hyundai.

120.    Defendant was at all relevant times a "merchant" with respect to motor vehicles under O.C.G.A. §§ 11-2-104(1) and 11-2A-103(3), and "sellers" of motor vehicles under § 11-2-103(1)(d).

121.    Defendant is and was at all relevant times a "lessor" of motor vehicles under O.C.G.A. § 11-2A-103(1)(p).

CLASS ACTION COMPLAINT

122.    The Class vehicles are and were at all relevant times "goods" within the meaning of O.C.G.A. §§ 11-2-105(1) and 11-2A-103(1)(h).

123.    A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to O.C.G.A. §§ 11-2-314 and 11-2A-212.

124.    Defendant knew or had reason to know of the specific use for which the Class Vehicles were purchased or leased. Defendant provided Plaintiffs and the Georgia Class Members with an implied warranty that the Class Vehicles and any parts thereof were merchantable and fit for the ordinary purposes for which they were sold.

125.    However, the Class Vehicles did not comply with the implied warranty of merchantability because they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for their ordinary purpose of providing reasonably reliable, durable, and safe transportation at the time of sale or thereafter because the Steering Defect rendered the Class Vehicles dangerous and difficult to operate.

126.    Any attempt by Defendant to disclaim or limit the implied warranty is unconscionable and unenforceable here. Specifically, the warranty limitation is unenforceable because Hyundai knowingly sold, distributed, or leased defective products without informing consumers about the Steering Defect. The time limits are unconscionable and inadequate to protect Plaintiffs and the Georgia Class Members. Among other things, Plaintiffs and the Georgia Class Members did not determine these time limitations and/or did not know of other limitations not appearing in the text of the warranties, the terms of which were drafted by Hyundai and unreasonably favored Hyundai. A gross disparity in bargaining power and knowledge of the extent, severity, and safety risk of the Steering Defect existed between Plaintiffs and the Georgia Class Members.

127.    Plaintiffs and Georgia Class Members have provided Defendant with reasonable notice and opportunity to cure the breaches of their implied warranties by

CLASS ACTION COMPLAINT

way of the numerous complaints filed against them and the individual notice letter sent by Plaintiffs within a reasonable amount of time.

128.   As a direct and proximate result of Defendant's breach of the implied warranty of merchantability, Plaintiffs' and Georgia Class Members' Class vehicles were and are defective. Therefore, Plaintiffs and Georgia Class Members have been damaged in an amount to be proven at trial.

## COUNT 8
### Violation of Georgia Fair Business Practices Act
### O.C.G.A. § 10-1-390, *et seq.*
#### (On Behalf of the Plaintiffs and Georgia Sub-Class)

129.   Plaintiffs repeat and re-allege each and every allegation contained in the preceding paragraphs as if set forth herein.

130.   Plaintiffs bring this claim individually and on behalf of the other Georgia Class Members, against Hyundai.

131.   The Georgia Fair Business Practices Act asserts that "[u]nfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce" are unlawful. O.C.G.A. § 10-1-393(a).

132.   Plaintiffs gave Hyundai more than thirty days' notice of the defects with their Palisade and offered Hyundai the opportunity to repair to defects or repurchase the vehicle. Hyundai failed to do either.

133.   Hyundai intentionally engaged in the unfair and deceptive practices detailed above, as evidenced by Hyundai's continuing failure to disclose the Steering Defect to consumers despite notice and knowledge of the defect.

134.   Plaintiffs and the Georgia Class Members are entitled to three times their actual damages as a result of Hyundai's intentional violation. O.C.G.A § 10-1-399(c).

135.   Plaintiffs and the Georgia Class Members are entitled to injunctive and monetary relief, including exemplary damages, based on Hyundai's violations of the Georgia Fair Business Practices Act.

\\\

CLASS ACTION COMPLAINT

## **COUNT 9**
### **Unjust Enrichment (In the Alternative)**
### **(On Behalf of the Plaintiffs and Georgia Sub-Class)**

136.    Plaintiffs repeat and re-allege each and every allegation contained in the preceding paragraphs as if fully set forth herein.

137.    Plaintiffs bring this claim under Georgia Law, individually and on behalf of the other Georgia Class Members, against Hyundai.

138.    When Plaintiffs and Georgia Class Members purchased or leased the Class Vehicles, they conferred tangible and material economic benefits upon Defendant, who readily accepted and retained these benefits.

139.    Plaintiffs and Georgia Class Members would not have purchased or leased their Class Vehicles, or would have paid less for them, had they known of the Steering Defect at the time of purchase or lease. Therefore, Defendant profited from the sale and lease of the Class Vehicles to the detriment and expense of Plaintiffs and Georgia Class Members.

140.    Defendant knew of these benefits because they were aware of the Steering Defect, yet they failed to disclose this knowledge and misled the Plaintiffs and Georgia Class Members regarding the nature and quality of the Class Vehicles while profiting from this deception.

141.    Plaintiffs and Georgia Class Members are entitled to restitution of the benefits Defendant unjustly retained and/or any amounts necessary to return Plaintiffs and Georgia Class Members to the position they occupied prior to dealing with Defendant, with such amounts to be determined at trial.

142.    Plaintiffs plead this claim separately as well as in the alternative to their claims for damages under Fed. R. Civ. P. 8(a)(3), because if Plaintiffs' claims for damages are dismissed or judgment is entered on them in favor of Defendant, Plaintiffs will have no adequate legal remedy.

\\\

\\\

CLASS ACTION COMPLAINT

# **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, respectfully request that this Court enter judgment against Defendant and in favor of Plaintiffs and the Class, and pray for judgment as follows:

a) An order certifying the proposed Class, designating Plaintiffs as named representative of the Class, and designating the undersigned as Class Counsel;

b) A declaration that Defendant is financially responsible for notifying all the Class Members of the Steering Defect;

c) An order enjoining Defendant from further deceptive distribution, sales, and lease practices with respect to the Class Vehicles; compelling Defendant to issue a voluntary recall for the Class Vehicles pursuant to 49 U.S.C. § 30118(a); compelling Defendant to repair and eliminate the Defect from every Class Vehicle; enjoining Defendant from selling the Class Vehicles with the misleading information; and/or compelling Defendant to reform its warranty in a manner deemed to be appropriate by the Court, to cover the injury alleged and to notify all Class Members that such warranty has been reformed;

d) Damages and restitution in an amount to be proven at trial;

e) Any and all remedies provided pursuant to the express and implied warranty laws and consumer protection statutes alleged herein;

f) An award to Plaintiffs and the Class of compensatory, exemplary, and statutory damages as permitted by law, including interest, in an amount to be proven at trial;

g) A declaration that Defendant must disgorge, for the benefit of the Class, all or part of the ill-gotten profits it received from the sale or lease of Class Vehicles, and/or make full restitution to Plaintiffs and the Class Members;

h) An award of pre-judgment and post-judgment interests, as provided by law;

CLASS ACTION COMPLAINT

i) An award of attorneys' fees and recoverable litigation expenses as may be allowable under applicable law;

j) Leave to amend the Complaint to conform to the evidence produced at trial; and

k) Such other relief as the Court may deem appropriate under the circumstances.

## JURY TRIAL DEMAND

Plaintiffs hereby demand a jury trial for any and all issues in this action so triable.

Dated: July 17, 2023                    Respectfully submitted,

By:   /s/ Michael F. Ram

**MORGAN & MORGAN**
**COMPLEX LITIGATION GROUP**
Michael F. Ram (SBN. 104805)
Marie N. Appel (SBN. 187483)
711 Van Ness Avenue, Suite 500
San Francisco, CA 94102
Telephone: (415) 358-6913
mram@forthepeople.com
mappel@forthepeople.com

**EPPS, HOLLOWAY, DELOACH**
**& HOIPKEMIER, LLC**
Kevin E. Epps, *Pro Hac Vice* to be submitted
Kevin@ehdhlaw.com
Tyler Gaines, *Pro Hac Vice* to be submitted
Tyler@ehdhlaw.com
1220 Langford Drive, Building 200-101
Watkinsville, Georgia 30677
Telephone: (706) 508-4000
Facsimile: (706) 842-6750

*Attorneys for Plaintiffs and the Proposed Classes*

29

CLASS ACTION COMPLAINT